**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HANNAH BLAKENEY, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>ARTHUR J. GALLAGHER & CO.,<br><br>        Defendant. | No. 23 C 16624<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Hannah Blakeney alleges that her former employer, Arthur J. Gallagher & Co. ("Defendant"), failed to pay her overtime wages in violation of the Fair Labor Standards Act ("FLSA"). Seven additional plaintiffs have opted in and joined Blakeney's allegations. They have moved for an order granting court-facilitated notice under the FLSA, 29 U.S.C. § 216(b). That motion is granted.

**Background**

Defendant is in the business of insurance, risk management, and related consulting services. Defendant employed Plaintiffs as "Client Services Associates" ("CSAs"), whose job responsibilities include assisting customers and responding to inquiries by phone and email. More than 2,100 CSAs have worked for Defendants since March 2021 in more than 200 locations nationwide. CSAs are paid on an hourly basis and are "non-exempt" under the FLSA, such that they are entitled to overtime compensation. Plaintiffs allege that "Defendant has a common, uniform, and

widespread policy and practice which discourages CSAs from reporting overtime hours," and that as a result, Defendant denied them overtime wages they were owed. Plaintiffs also allege that this failure to pay overtime sometimes results from a practice of not paying overtime without pre-approval, by rarely granting pre-approval, and also by requiring CSAs to clock out for an unpaid meal break, while requiring CSAs to work during the meal break. These allegations are based on declarations submitted by four of the Plaintiffs. *See* R. 30-2 (Blakeney); R. 30-3 (Gordon); R. 30-4 (Banks); R. 30-5 (Velez); R. 41-1 (Blakeney supplemental); R. 41-2 (Gordon supplemental). These declarations relay anecdotes about supervisors making statements which Plaintiffs understood to discourage CSAs from seeking pre-approval for overtime and from recording overtime hours.

Defendant has an express policy requiring all employees to record all of their time worked, including overtime, and that supervisors approve it. *See* R. 39-1 (¶¶ 2-5). Defendants oppose the specific allegations Plaintiffs make in their declarations with declarations from supervisors denying Plaintiffs' anecdotes of discouraging statements. *See* R. 39-14 (Cook); R. 39-15 (Cooper); R. 39-16 (Florian); R. 39-17 (Galardy); R. 39-18 (Green); R. 39-19 (Meyers); R. 39-20 (Puryear); R. 39-22 (Stephens). The supervisors also explain that the process for assigning work to CSAs varies from team to team, and location to location.

In addition to the supervisor declarations, Defendant provides statistics about overtime payments made to CSAs. These statistics include the following: (1) more

2

than 50% of CSAs recorded overtime; and (2) nearly 23% of CSAs recorded at least ten workweeks worth of overtime. *See* R. 39-10 at 5 (¶ 15).

## Analysis

"The Fair Labor Standards Act authorizes similarly situated employees to collectively sue employers for violations of the Act." *Richards v. Eli Lilly & Co.*, 149 F.4th 901, 905 (7th Cir. 2025) (citing 29 U.S.C. § 216(b)). "District courts take an active and early role in the management of these [collective actions] including by issuing notice to potential plaintiffs so that they may opt to join the collective." *Richards*, 149 F.4th at 905.

To secure notice, "a plaintiff must first make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated." *Id.* at 913. That is, "a plaintiff must produce *some evidence* suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Id.* (emphasis added). In determining whether notice is appropriate, courts must permit defendants "to submit rebuttal evidence and, in assessing whether a material dispute exists, courts must consider the extent to which plaintiffs engage with opposing evidence." *Id.*

## I.    Evidence

Here, Plaintiffs have submitted declarations regarding their personal knowledge that Defendant discouraged them from recording all the time they worked in order to discourage and limit recording of overtime. These kind of claims and this kind of evidence are a common basis to authorize notice of a collective action. *See* R.

30 at 9-10 (citing cases). These cases generally concern hourly employees who have substantially similar job responsibilities and are subject to the same express policies regarding overtime work. These cases have found that such employees are similarly situated on the basis of declarations from former employees alleging that their supervisors prohibited or discouraged them from recording overtime hours. The declarations Plaintiffs have submitted is this case constitute "some evidence" that the class is "similarly situated."

In the wake of *Richards*, however, the Court must also consider Defendants' contrary evidence. The problem with Defendants' evidence and argument is that it is primarily relevant to the ultimate merits question in this case, as opposed to the question relevant to this motion, which is whether Plaintiffs are similarly situated. Defendants contend that, to meet their "threshold evidentiary burden, Plaintiffs must produce evidence suggesting that both: CSAs around the country operated under a common policy or practice by which overtime worked went uncompensated; and [Defendant] had knowledge of such uncompensated overtime." R. 39 at 5. But this formulation of the issue suggests that Plaintiffs must produce evidence indicating that they are likely to succeed on the merits, which is simply not Plaintiffs' burden on this motion. The only evidence Plaintiffs must produce regarding the merits of their claims at this stage of the case is evidence sufficient to demonstrate the plausibility of their claims. Beyond that, the evidence required here at this stage is merely "some evidence" that Plaintiffs are "*similarly situated*," not that Plaintiffs have proven the existence of a policy or practice and Defendant's knowledge it.

4

Defendants argue that Plaintiffs' declarations are insufficient to establish that notice is proper because they attempt "to extend their claimed individual circumstances to other" CSAs around the country of whom they lack personal knowledge. *See* R. 39 at 6. But inferences regarding whether other unnamed CSAs were discouraged from recording overtime *is not* the purpose of Plaintiffs' declarations at this stage of the case. The purpose of Plaintiffs' declarations is to plausibly establish an FLSA violation. Contrary to Defendant's argument, the evidence that they are similarly situated to other CSAs is not based on the anecdotes of an illegal practice, but rather comes from the fact that all CSAs had similar job responsibilities and were subject to the same time recording policies. The fact that the current named Plaintiffs do not have personal knowledge of the experiences of all members of the putative class is not a basis to deny notice.

Defendants also argue that notice is not appropriate because their supervisor declarations "rebut" Plaintiffs' declarations. But the declarations produced by Defendant simply serve to establish a factual dispute regarding whether Plaintiffs and other potential class members were in fact discouraged from recording overtime. While this is primarily a merits issue, it is possible that some supervisors discouraged overtime while others did not, which might affect the size of the collective action or whether it is practical to maintain a collective action in this case at all. But it is likely impossible to discover whether differences in supervisor conduct affect whether a collective action can be certified without obtaining statements from additional potential class members. And that evidence is "likely in the hands of yet-to-be-noticed

5

plaintiffs." *Richards*, 149 F.4th at 913. As the Seventh Circuit has suggested, the appropriate course in such circumstances is to "issue notice to the proposed collective while postponing the final determination as to whether plaintiffs are similarly situated until plaintiffs move for certification after opt-in and discovery are complete." *Id.* In other words, this issue regarding potential differences in supervisor conduct, and what can or cannot be inferred about Defendant's knowledge from those differences, it is not a basis to deny notice.

In addition to the supervisor declarations, Defendant has produced statistics about the amount of overtime it paid to CSAs. Defendant argues that Plaintiffs cannot show that they were subject to a common policy because more than 50% of CSAs actually recorded overtime. This might be sufficient evidence to deny notice if Plaintiffs' claim was simply that Defendant prohibited recording overtime. But Plaintiffs claim instead that Defendants *discouraged* seeking overtime and recording it when it occurred. The fact that some CSAs recorded overtime does not eliminate the plausibility of a policy discouraging and limiting overtime. And for the reasons discussed above with respect to the evidence of supervisor declarations, it is also not evidence that CSAs are not sufficiently similarly situated to justify notice in this case.

## II. Notice

Lastly, Defendant argues that the following groups should be excluded from notice: (1) California-based CSAs who released their FLSA claims in a prior settlement; (2) CSAs outside the applicable statute of limitations; (3) CSAs who began

working for Defendant after the filing of this lawsuit; and (4) CSAs who released their right to a jury trial or their FLSA claims in their employment contracts.

Several of these issues are already resolved. Plaintiffs point out that the definition of Plaintiffs' collective excludes the California-based CSAs who have already released their claims in settlement. Further, the Court assumes that Defendants are correct that the parties have agreed that April 3, 2021 is the tolled statute of limitations. And Plaintiff does not oppose Defendant's contention that CSAs who began working for Defendant after this lawsuit was filed are excluded from the collective. Lastly, whether notice should issue is not affected by any questions about whether the employment contract clauses identified by Defendant are sufficient to release the right to jury trial or any claims in this case. Whether any force should be given to such releases can be addressed by future motion if necessary.

### Conclusion

Therefore, Plaintiffs' motion approving notice to the collective [30] is granted. Because Defendant did not raise any objection to the form of notice Plaintiffs submitted, the Court presumes it is adequate. Nevertheless, the Court orders a joint status report due April 20, 2026, to apprise the Court of any remaining issues that need to be resolved prior to issuance of the notice. A telephone status hearing is set for April 22, 2026.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: March 27, 2026

8